**INNER SECRETS/SECRETLY YOURS, INC., Plaintiff,**

v.

**UNITED STATES of America, United States Customs Service and District Director, Customs District Office, JFK Airport, Defendants.**

Slip Op. 94–171.
Court No. 94–10–00596.

United States Court of International Trade.

Nov. 7, 1994.

Ross & Hardies, Steven P. Kersner, Evelyn M. Suarez, Roger Banks, Stephen M. De Luca and Jocelyn R. Roy, Washington, DC, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice Barbara Silver Williams, Washington, DC (Karen P. Binder, U.S. Customs Service, of counsel), for defendants.

## OPINION

TSOUCALAS, Judge:

Plaintiff, Inner Secrets/Secretly Yours, Inc. ("Inner Secrets"), an importer of women's undergarments from Hong Kong, moves pursuant to Rule 65(a) of the Rules of this Court for a preliminary injunction enjoining the United States of America, the United States Customs Service ("Customs") and the District Director, Customs District Office, John F. Kennedy International Airport ("JFK Customs") (collectively "defendants"), from preventing the release of plaintiff's imports, entry numbers 523–0246820–3, 523–0249962–0 and 523–0246885–6 and its prospective imports of identical merchandise. Plaintiff seeks injunctive relief to preserve the status quo pending a decision on the merits in its civil action regarding the subject matter of this controversy.

Defendants move for dismissal pursuant to Rules 12(b)(1) and (5) of the Rules of this Court for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Defendants also request that the Court award them attorneys fees.

This case concerns several recent import transactions, as well as contemplated import transactions of Inner Secrets. The subject merchandise is manufactured of flannel fabric and is, therefore, seasonal.

## Background

Plaintiff's first transaction, entry number 523–0243288–6, consisting of 1,000 dozen boxer-style flannel garments, arrived on July 24, 1994 and was submitted to United States Customs, District Office, JFK Customs, on July 25, 1994. Plaintiff had classified the subject boxers under 6208.21.2010 of the Harmonized Tariff Schedule of the United States ("HTSUS"). This numerical designation identified the articles as women's cotton briefs and panties, requiring a visa quota category 352, and dutiable at 8.1% *ad valorem.*

On or about July 27, 1994, according to the Team Leader/Field National Import Specialist, Team 256, JFK Customs, ("Team 256"), which handles Hong Kong-origin knitted wearing apparel, it examined samples of the subject boxers and determined that the articles were woven apparel. Subsequently, Team 258, which handles woven apparel, determined that the garments were classifiable as HTSUS 6204.62.4055. This HTSUS numerical subheading designated that the articles were women's outerwear/shorts, requiring a textile category 348 export license, and dutiable at 17.7% *ad valorem.* Team 258 detained this first transaction. According to Team 256, on or about July 28, 1994, it conveyed these developments to plaintiff.

Plaintiff's second transaction, entry number 523–0243683–8, consisting of 1,000 dozen boxer-style flannel garments arrived on July 28, 1994 and was submitted to JFK Customs on July 29, 1994. These boxer-style flannel garments carried the same classification as had the first entry.

On July 29, 1994, plaintiff submitted further information to facilitate Custom's evaluation of the subject boxers.

By affidavit, the Team Leader/Field National Import Specialist, Team 256, declares that on July 29th, it told plaintiff that entry number 523–0243288–6 was being released "conditionally," pending further review by the National Import Specialist, but that if an outerwear/shorts classification was confirmed, Customs would issue Notices to Redeliver on the basis that plaintiff had failed to present the proper visa. Plaintiff claims that Team 256 never told it that its merchandise was being released conditionally pending further review.

On August 2, 1994, Team 258 examined plaintiff's second transaction, entry number 523–0243683–8.

The date of entry and release of entry numbers 523–0243288–6 and 523–0243683–8 was on or about August 2, 1994.

Plaintiff's third transaction, 1,400 dozen boxer-style flannel garments, also entered under visa quota category 352 and was released by JFK Customs on August 30, 1994.

According to plaintiff, it was not aware that the classification of its garments remained an open issue or that further investigation was being conducted subsequent to the release of its imports on August 2nd and August 30th.

Thereafter, the National Import Specialist confirmed that the subject boxers were classifiable as outerwear/shorts. On September 9, 1994, as plaintiff's entries had not been liquidated, Customs issued Notices to Redeliver.

Plaintiff's fourth transaction, either 2,042 dozen or 3,568 dozen boxer-style flannel garments, entry number 523–0247376–5 was classified by plaintiff as HTSUS 6208.91.3010. This numerical designation identified the articles as women's woven briefs and panties. On September 12, 1994, JFK Customs issued a Rejection Notice on this merchandise on the grounds that the subject boxers had been determined to be classifiable as outerwear/shorts and, therefore, required a visa quota category 348 export license.

According to plaintiff, it was immediately subsequent to the issuance of the Rejection Notice that it learned for the first time that the National Import Specialist was evaluating its merchandise. Plaintiff claims that prior to September 12, 1994, it had contracted with U.S. retailers to supply 55,293 dozen boxer-style garments, valued at $2 million, 5,293 dozen of which are currently awaiting shipment to the United States.

Plaintiff's fifth transaction, entry number 523–0246885–6, also boxer-style flannel garments, was denied entry by Customs on September 13, 1994 at the port of Newark.

According to plaintiff, on or about September 22, 1994, Customs told plaintiff that it could not consider plaintiff's request for a "ruling" with respect to classification of the subject boxers as prospective under the provisions of Part 177 of the Customs Regulations, 19 C.F.R. § 177 (1994), and instructed plaintiff to resubmit its request for a ruling as a request for an "internal advice ruling." According to plaintiff, it inquired of Customs whether the September 12th Notice of Rejection constituted a denial of entry so as to trigger the protest procedures of Part 174, 19 C.F.R. § 174 (1994), and after consulting with the Office of Trade Operations, Customs told plaintiff that the rejection notice constituted a step toward denial of entry but did not constitute a denial per se. Plaintiff claims that Customs told it that, under these circumstances, the procedure to follow would be to request an internal advice ruling. Plaintiff claims that further attempts to get a ruling were of no avail.

On September 29, 1994, plaintiff filed a request with Customs for an internal advice ruling. On October 11, 1994, Customs responded with HRL (Headquarters Ruling Letter) 957068. HRL 957068 stated that HRL 087940 contained a seven criteria guide for distinguishing men's boxer shorts from non-underwear garments. Under these criteria, a finding that the subject garment meets more than one of the criteria establishes a presumption that the garment is not underwear. HRL 957068 explained that these criteria had erroneously been utilized in HRL 951754 to classify women's flannel boxer shorts. Nonetheless, HRL 957068 ap-

plied the seven criteria to the subject boxers because plaintiff had asserted that it had relied upon the criteria in entering its merchandise. According to plaintiff, the subject garments meet only one of the criteria. Customs found that the subject boxers met two of the seven criteria. HRL 957068 conveyed that the criteria's utility was for men's underwear/outerwear boxer shorts distinctions and noted that HRL 951754 would be modified to so reflect.

On the basis of these criteria, marketing and advertising information, news articles and case law, HRL 957068 found that the subject boxers were classifiable as outerwear/shorts. According to plaintiff, its business relates exclusively to undergarments, its licensing agreement is for undergarments, it markets the subject boxers as underwear, and the industry treats the subject garments as underwear. Plaintiff asserts that, without giving prior notice, Customs' action modifies prior interpretive rulings and modifies the treatment previously accorded by Customs to identical merchandise.

On October 14, 1994, plaintiff sought injunctive relief from this Court. On October 21, 1994, a full hearing was held to determine whether a preliminary injunction should issue.

## Discussion

### Jurisdiction

Plaintiff predicates jurisdiction on 28 U.S.C. § 1581(h) and (i)(3) (1988).

■ Plaintiff carries the burden of demonstrating that the Court of International Trade has jurisdiction to hear and determine this case. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Smith Corona Group, SCM Corp. v. United States*, 8 C.I.T. 100, 102, 593 F.Supp. 415, 417–18 (1984).

### Jurisdiction Pursuant to 28 U.S.C. § 1581(h)

Plaintiff asserts that jurisdiction exists pursuant to 28 U.S.C. § 1581(h) because this action concerns a Customs ruling regarding the classification, duty and entry require-

ments of merchandise which "has been denied importation into the United States." *Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction ("Plaintiff's Brief")* at 7. At oral argument on October 21, 1994, plaintiff also asserted that HRL 957068 is, in substance, a ruling relating to prospective transactions. Plaintiff maintains that judicial review prior to importation of its prospective imports is necessary to avert the irreparable harm which plaintiff will suffer as a result of Customs' ruling. *Plaintiff's Brief* at 7. The irreparable harm envisioned by plaintiff is the loss of $2 million in sales, the loss of future business, and the threatened impairment of its ability to provide jobs for its employees. *Id.* at 7, 9–11. Plaintiff also contends that the criterion of irreparable harm is satisfied by the fact that, because it is barred from seeking monetary damages for Customs' misclassification, it will be left without a judicial remedy. *Id.* at 10.

Defendants argue that § 1581(h) jurisdiction does not extend to plaintiff's merchandise which has already been imported and denied entry. *Memorandum in Support of Defendants' Motion to Dismiss, Motion for Attorneys Fees, and Opposition to Plaintiff's Motion for Preliminary Injunction ("Defendants' Brief")* at 8. With respect to plaintiff's prospective imports, defendants contend that § 1581(h) does not confer jurisdiction upon the Court as the subject ruling is not a ruling within the meaning of this provision. Defendants submit that the subject ruling is an internal advice ruling and, as such, is exempt from judicial review under § 1581(h). *Defendants' Brief* at 8–9. In support of this contention, defendants paraphrase and quote a portion of this provision's legislative history. *Id.*[1]

In addition, defendants argue that plaintiff cannot demonstrate the requisite irreparable harm for § 1581(h) judicial review. Specifically, defendants contend that the harm resulting from lost profits, lost opportunities for sales contracts and lost goodwill does not constitute irreparable harm. *Defendants' Brief* at 9–10.

■ Title 28, United States Code, Section 1581(h) bestows upon this Court

exclusive *jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue* or change *such a ruling,* relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements ... or similar matters, but only *if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.*

(Emphasis added.)

As an initial matter, the Court expresses that judicial review pursuant to 28 U.S.C. § 1581(h) is available only for prospective transactions. *See, e.g., American Air Parcel Forwarding Co. v. United States,* 5 C.I.T. 8, 557 F.Supp. 605 (1983), *aff'd,* 718 F.2d 1546 (Fed.Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984); *Dennison Mfg. Co. v. United States,* 12 C.I.T. 1, 3, 678 F.Supp. 894, 897 (1988).

■ With respect to the part of plaintiff's motion which concerns contemplated imports, the Court finds that this case does not present a ruling within the scope of § 1581(h).

Generally, rulings may be requested under Part 177 of 19 C.F.R. only with respect to prospective transactions—that is, transac-

---

1. The legislative history of § 1581 states:
   The time-honored rule is that the court does not possess jurisdiction to review a ruling or a refusal to issue or change a ruling by the Secretary of the Treasury unless it relates to a subject matter presently within the jurisdiction of the United States Customs Court, for example, an action brought pursuant to section 515 of the Tariff Act of 1930. The Committee intends a very narrow and limited exception to this rule. The word 'ruling' is defined to apply to a determination by the Secretary of the Treasury as to the manner in which it will treat the contemplated transaction. *In determining the scope of the definition of a 'ruling,' the Committee does not intend to include 'internal advice' or a request for 'further review,' both of which relate to completed import transactions.* H.R.Rep. No. 96–1235, 96th Cong., 2d Sess. 46 (1980), *reprinted in* 1980 U.S.CODE CONG. & ADMIN.NEWS 3729, 3758 (emphasis added).

tions which are not already pending before a Customs Service office by reason of arrival, entry, or otherwise. 19 C.F.R. § 177.1(a) (1994).

In this case, however, plaintiff's initial importations of boxer-style garments raised questions regarding classification and visa quota category. These questions were resolved adversely to plaintiff. Customs determined that the subject boxers were classifiable as outwear/shorts, requiring a visa category 348 export license.[2] Further, on September 9, 1994, plaintiff was issued Notices to Redeliver its initial entries based on Customs' determination. In addition, on September 12, 1994, Customs issued plaintiff a Rejection Notice on plaintiff's fourth transaction of identical merchandise based on the above noted determination. The issue of the subject boxer's classification, therefore, was before the Customs Service by reason of arrival, entry, or otherwise with respect to several of plaintiff's transactions. The classification issue surfaced again upon the arrival, on September 13, 1994, of plaintiff's fifth transaction. As the Court has indicated, § 1581(h) is reserved for review of prospective imports.

The Notices to Redeliver, the Notice of Rejection, and the denial of entry of plaintiff's fifth transaction all occurred prior to plaintiff's request for an internal advice ruling. Concededly, plaintiff was contemplating further imports of identical merchandise. However, the logical inference is that these actions by Customs were influential in prompting plaintiff to seek Customs' internal advice.[3] Moreover, plaintiff admits that, on September 22, 1994, Customs explicitly informed it that Customs could not issue a ruling as prospective under Part 177 of 19 C.F.R., but would accept a request for internal advice. Therefore, plaintiff knew that Customs could not entertain a request for a ruling. On September 29, 1994, plaintiff, in

fact, filed a request for internal advice with JFK Customs in accordance with 19 C.F.R. § 177.11 (1994). The anticipated response, irrespective of whether it might also relate to contemplated transactions, would logically relate to transactions which had resulted in arrival or in the filing of an entry or other document.

Hence, the facts of this case clearly show that the request for internal advice was made with regard to goods already imported into the United States. This militates against a finding that Customs' internal advice ruling is a ruling within the scope of § 1581(h).

Further, the legislative history of § 1581 convinces the Court that its jurisdiction does not extend to the internal advice which Customs offers as guidance on the interpretation or proper application of the Customs and related laws. See American Air Parcel, 5 C.I.T. at 12, 557 F.Supp. at 608.

■ In addition, the Court finds that plaintiff has not demonstrated the "irreparable harm" which would support the Court's exercise of jurisdiction over an appeal of a ruling prior to importation of merchandise.

Upon receipt of the Notices to Redeliver, plaintiff could have filed a protest pursuant to 19 U.S.C. § 1514(a)(4) (1988 & 1993 Supp.). This avenue for redress was available to plaintiff prior to any alleged misinformation from Customs with regard to the protestability of the subsequent Notice of Rejection. In addition, regardless of whether or not Customs led plaintiff to believe that the Notice of Rejection was not a denial of entry, common sense should have dictated that, by that rejection, merchandise was being denied entry. Therefore, plaintiff should have protested Customs' action pursuant to 19 U.S.C. § 1514(a)(4). Furthermore, plaintiff could have minimized the threat of financial loss or instability by promptly seeking an accelerated review of a protest relating to

**2.** The tariff classification noted by the importer on the entry form is subject to approval by the district director. 19 C.F.R. § 141.90(a) (1994). The district director is responsible for determining that the merchandise is classified in accordance with the HTSUS, as interpreted by administrative and judicial rulings. 19 C.F.R. § 152.11 (1994).

**3.** 19 C.F.R. § 177.11(a) (1994) states, *inter alia*, that "(a)dvice or guidance as to the interpretation or proper application of the Customs and related laws with respect to a specific Customs transaction may be requested by Customs Service field offices from the Headquarters Office at any time, whether the transaction is prospective, current, or completed."

exclusion of merchandise pursuant to 19 C.F.R. § 174.21(b) (1994). "The essence of 'irreparable harm' is that the injury cannot receive reasonable redress." *Dennison Mfg. Co.*, 12 C.I.T. at 3, 678 F.Supp. at 897. Plaintiff's failure to pursue these avenues weighs against its claim of irreparable harm.

Accordingly, the Court lacks jurisdiction under § 1581(h) with respect to plaintiff's prospective imports.

*Jurisdiction Pursuant to 28 U.S.C. § 1581(i)*

■ Title 28, United States Code, Section 1581(i)(3) provides, in relevant part:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

.     .     .     . ˙    .

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety ...

Plaintiff asserts that the Court's jurisdiction extends to this action pursuant to 28 U.S.C. § 1581(i)(3) as plaintiff's claims arise out of the quantitative restrictions imposed by Customs on women's underwear garments, the procedural requirements of 19 U.S.C. § 1625(c),[4] and the safeguards of the fifth and fourteenth amendments of the United States Constitution. *Plaintiff's Brief* at 8.

Plaintiff maintains that an administrative protest would be a manifestly inadequate remedy where Customs Headquarters has issued a final decision regarding classification and further delay would threaten plaintiff with immediate injury and irreparable harm. *Id.* Plaintiff suggests that, under these circumstances, exhaustion of administrative

remedies is not a prerequisite to the Court's jurisdiction. *Id.*

In rebuttal, defendants raise several arguments. First, defendants maintain that, except in the most extraordinary circumstances, Customs classification decisions are reviewable under 28 U.S.C. § 1581(a) (1988).[5] Defendants argue that § 1581(a) review is available for cases involving actual importation of merchandise, entry or exclusion from entry, conditioned on the filing of an administrative protest and the denial thereof, prior to the commencement of an action in this Court challenging a Customs decision. *Defendants' Brief* at 6. Defendants contend that any claim that an administrative protest would be futile is without merit. *Id.* at 15.

Second, defendants point out that § 1581(i) judicial review is available only when another jurisdictional basis is unavailable or the remedy provided under that other subsection would be manifestly inadequate. *Id.* at 13–15. Defendants argue that plaintiff may not claim that § 1581(a) review would be manifestly inadequate when it has not sought an accelerated review pursuant to 19 C.F.R. § 174.22 (1994). *Id.* at 16. Defendants also argue that plaintiff's contention that its potential for lost sales translates to an inadequacy in the protest procedure is spurious. *Id.* at 18. Defendants further urge that § 1581(i) was not intended to create new causes of action or to supersede more specific jurisdictional provisions and argue that plaintiff should not be allowed to circumvent the jurisdictional statutory scheme merely because it finds the statutory requirements burdensome. *Id.* at 13–15.

The Court finds that, generally, challenges to classification, valuation and entry of merchandise are reviewable pursuant to 28 U.S.C. § 1581(a) after the administrative remedies afforded by 19 U.S.C. §§ 1514 and 1515 (1988 & 1993 Supp.) have been exhausted. "Congress did not intend the Court of

---

**4.** 19 U.S.C. § 1625(c) (*as amended by the Customs Modernization Act § 623 (Dec. 8, 1993); see* 19 U.S.C.A. § 1321 (West Supp.1994)), provides that certain rulings and decisions may not be modified by Customs without specific notification requirements.

**5.** 28 U.S.C. § 1581(a) provides that:

(a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

International Trade to have jurisdiction over appeals concerning completed transactions when the appellant had failed to utilize an avenue for effective protest before the Customs Service." *United States v. Uniroyal, Inc.*, 69 C.C.P.A. 179, 182, 687 F.2d 467, 471 (Fed.Cir.1982).

Section 1581(i) is a "residual" jurisdictional provision which may be invoked as a basis for subject matter jurisdiction where another subsection of § 1581 is unavailable or when the remedy afforded by the other subsection would be "manifestly inadequate." *See Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States*, 13 C.I.T. 584, 717 F.Supp. 847 (1989), *aff'd*, 903 F.2d 1555 (Fed.Cir.1990). *See also Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir.1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

In this case, on September 9, 1994, Customs issued Notices to Redeliver on plaintiff's initial entries. Further, on September 12, 1994, Customs issued plaintiff a Rejection Notice on its fourth import transaction and on September 13, 1994, Customs denied entry to plaintiff's fifth import transaction. Customs decisions to exclude merchandise and its demands for redelivery are protestable pursuant to 19 U.S.C. § 1514(a), which provides in pertinent part:

(a) **Finality of decisions** ...

[D]ecisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—

. . . . .

(4) *the exclusion of merchandise from entry or delivery or a demand for redelivery* to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

. . . . .

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28....

(Emphasis added).

Hence, plaintiff was required to protest Customs' actions in order to raise the classification issue. It is irrelevant that the subject internal advice ruling would be controlling authority in any disposition of a filed protest where judicial review would be available after a protest is denied. *See Uniroyal, Inc.*, 69 C.C.P.A. at 179, 687 F.2d at 467. *See also Atmel Corp. v. United States*, 13 C.I.T. 679, 719 F.Supp. 1101 (1989).

Further, delays inherent in the protest procedures do not render these procedures manifestly inadequate. If plaintiff had financial concerns related to such delays, it could have sought an accelerated review pursuant to 19 C.F.R. § 174.22 and thereby reached the Court within a shortened period. The fact that prompt resolution of this controversy was not possible is not an adequate basis for invoking the Court's residuary jurisdiction. Thus, failure to seek an accelerated review detracts from plaintiff's position that the traditional avenue of review would be manifestly inadequate.

Moreover, plaintiff overlooks the fact that, pursuant to 19 U.S.C. § 1514, protestable decisions are final and conclusive unless protested. To say that a protest would be futile overlooks the consequences of § 1514 with regard to the finality of Customs' decisions in absence of protest. *Uniroyal, Inc.*, 69 C.C.P.A. at 179, 687 F.2d at 467. Plaintiff cannot take it upon itself to determine whether it would be futile to protest or not. In order to protect itself, a protest should have been filed and an accelerated review should have been requested.

With respect to plaintiff's argument that defendants have violated established procedure and safeguards designed to protect the public, the Court finds that the relationship between the merits of this argument and the jurisdictional issue is attenuated. Claims of such violations are more appropriately raised in the context of a protest and subsequent civil action. *American Air Parcel*, 718 F.2d 1546, 1551 (Fed.Cir.1983),

*cert. denied,* 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984).

In sum, the Court finds that it lacks jurisdiction under § 1581(i) in this action.

Defendants have requested attorneys fees pursuant to 28 U.S.C. § 1927 (1988) and Federal Rules of Civil Procedure, Rule 11. In light of the above, the Court finds that the allowance of attorneys fees in this matter is not warranted and accordingly denies defendants' request.

### Conclusion

Plaintiff, Inner Secrets, has failed to establish that the Court has subject matter jurisdiction over this action. Accordingly, plaintiff's motion for a preliminary injunction is denied. Defendants' motion to dismiss this action for lack of jurisdiction is granted. Defendants' motion for attorneys fees is denied. This case is dismissed.